**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ACCIDENT INSURANCE COMPANY,
INC.,

        **Plaintiff,**

v.                                                                      **Case No: 6:24-cv-487-WWB-DCI**

DWF INSTALLATIONS, INC.,
AMERICAN BUILDERS SUPPLY, INC.,
and ASHTON ORLANDO
RESIDENTIAL, LLC,

        **Defendants.**

**ORDER**

Plaintiff brings this declaratory action against Defendants DWF Installations, Inc. (DWF) and American Builders Supply, Inc. (ABS) (collectively, Defendants). Doc. 14.[1] Plaintiff claims that it issued a commercial general liability policy to DWF (the Policy) and Plaintiff "asks this Court to address questions of present and actual controversy between the parties concerning insurance coverage for claims pending in underlying liability lawsuit captioned: *Hamlin Reserve Homeowners Association, Inc. v. Ashton Orlando Residential L.L.C., d/b/a Ashton Woods Homes, LLC. v. American Builders Supply, Inc. v. DWF Installations, Inc., et. al.,* Orange County Circuit Court Case No.: 2022-CA-3162 ("Underlying Suit")." *Id*. at 1. Specifically, Plaintiff alleges that Hamlin Reserve Homeowners brought a construction defect lawsuit against Ashton, and Ashton in turn filed a third-party complaint against ABS. *Id*. at 2-3. ABS then filed a third-party complaint against DWF. *Id*. at 6; Doc. 14-3 (the Third-Party Complaint).

---

[1] Plaintiff filed the initial Complaint against DWF, ABS, and Ashton Orlando Residential, LLC (Ashton). Doc. 1. The Court granted leave to amend to omit claims against Ashton. Doc. 13.

It does not appear that DWF has filed an insurance claim with Plaintiff related to the events at issue in the Underlying Suit,[2] but Plaintiff seeks a declaration that it does not have a duty to defend DWF against ABS or indemnify DWF against ABS's claims. Doc. 1 at 6-9.

Defendants have not appeared in this matter and, therefore, Plaintiff moved for Clerk's Entry of Default pursuant to Federal Rule of Civil Procedure 55(a). Docs. 21, 22. The Clerk entered default and Plaintiff moved for default judgment against Defendants under Rule 55(b)(1). Doc. 27. By Order dated July 19, 2024, the Court denied Plaintiff's request because Plaintiff failed to (1) demonstrate personal jurisdiction over Defendants; (2) address the basis for diversity jurisdiction; (3) demonstrate that service of process was sufficient; (4) discuss the elements of the causes of action and the related facts; (5) advise the Court if it sought default judgment as to one or both counts; (6) identify the applicable law; and (7) sufficiently brief the issues of ripeness of the claims and whether there is an actual case or controversy before the Court. Doc. 28.

Plaintiff has since filed a Second Motion for Final Default Judgment Against Defendants (Doc. 32, the Motion) and Notices of Filing Exhibits in Support of the Motion (Docs. 33, 34). The Court is still not persuaded that Plaintiff is entitled to relief.

## I.    Discussion

## A.  Subject Matter Jurisdiction

First, the Court still questions the existence of diversity jurisdiction in this matter. As stated in the July 19, 2024 Order, the Court must ensure that it has jurisdiction over the claims and parties before entering default judgment. Doc. 28 (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Absent from Plaintiff's initial motion for default

---

[2] To be clear, the Court does not find that Plaintiff was required to wait for DWF to file an insurance claim before bringing suit under the Declaratory Judgment Act. The Court notes the lack of claim to explain the relevant events.

judgment was any mention of jurisdiction, but Plaintiff now claims that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  Doc. 32 at 7 to 9.  Yet Plaintiff still does not adequately address its assertion that the amount in controversy exceeds $75,000.00.

"When an insurer seeks a declaration that it has 'no duty to defend or indemnify its insured in an underlying lawsuit,' the amount in controversy is determined by examining the following factors: '(1) the coverage limits under the insurance policy; (2) the amount of damages sought in the underlying lawsuit; and (3) the pecuniary value of the obligation to defend the underlying lawsuit.'"  *Southern-Owners Ins. Co. v. Maronda Homes, Inc.*, 2019 WL 2929715, at *2 (M.D. Fla. July 9, 2029) *(quoting Clarendon Am. Ins. Co. v. Miami River Club, Inc.*, 417 F. Supp. 2d 1309, 1316 (S.D. Fla. 2006)).

As to the first factor, Plaintiff refers the Court to the policy attached to the Amended Complaint for the proposition that the coverage limit was $1,000,000.00.  Doc. 32 at 8 (citing Doc. 14-1).  But, again, as stated in the July 19, 2024 Order, that policy is for the coverage period of September 10, 2012 to September 10, 2013, and not the relevant coverage period of September 2016 to September 2017.  Doc. 28 at 4.  Accordingly, Plaintiff's citation to that policy does not assist the Court.[3]

---

[3] The Court notes that weeks after filing the Motion, Plaintiff provided the Court with supporting exhibits.  Docs. 33, 34.  Plaintiff's submission, however, does not necessarily provide additional guidance on the jurisdictional question because Plaintiff does not refer the Court to the relevant exhibit in its discussion on coverage.  *See* Doc. 32 at 8 (citing only to Doc. 14-1).  In the Motion, Plaintiff cites elsewhere to the exhibits later filed at Docs. 33, 34 (i.e., Doc. 32 at 9) but not on the coverage factor.  *See id*.  As such, the Court is left to sift through the new exhibits to find the relevant policy and review the document.  It is not the Court's burden to do so and, therefore, the Motion is deficient.  Assuming *arguendo* that the Court should consider the policy attached at Doc. 33-1—the document relating to the policy period from September 10, 2016 to September 10, 2017 which does reflects a $1,000,000.00 coverage limit—Plaintiff still does not satisfactorily address the other factors.

With respect to the second factor, Plaintiff states that the "[Homeowner's] Association produced a cost of repair estimate it alleges relates to the various damages asserted is $6,797,763.60 for the whole community. The alleged total cost to replace the windows was $584,238.96 (i.e., 9% of the damages)." Doc. 32 at 8. Plaintiff provides no citation to the record to support this assertion, and the Court cannot ascertain from its own review of the exhibits where these figures are derived.

Plaintiff next asserts that "ABS has alleged DWF performed 97% of the window installation on the Hamlin Reserve Project and claims it is entitled to defense and indemnity for all of DWF's work. . .. This, alone, reflects exposure to AIC of $566,711.79 plus the cost of defending ABS as well." Doc. 32 at 8.[4] Plaintiff cites to ABS's Third-Party Complaint in support of this statement (Doc. 32 at 8, citing Doc. 14-3 at 15 to 24), but a review of that pleading does not seem to reflect these purported dollar amounts or the percentage.[5] Based on that citation, the Court simply does not see the $566,711.79 amount, any allegations regarding the percentage of the window installation damage, or how much work should be attributed to DWF.[6]

ABS, however, does include in the Third-Party Complaint an allegation that "[t]his is an action for damages against Third-Party Defendants seeking damages exceeding $50,000.00 exclusive of costs, interests, and attorneys' fees[]" (Doc. 14-3 at 3), but that figure alone is clearly

---

[4] Plaintiff also states in the Amended Complaint that ABS asserts that DWF performed 97% of the related work. Doc. 14 at 3. Plaintiff does not cite to an exhibit to support that number and, therefore, it is not clear where the percentage is derived.

[5] In the Third-Party Complaint, ABS cites to "Exhibit 'D'" described as a copy of a subcontract. Doc. 14-3 at 5. Plaintiff has not attached "Exhibit 'D.'" *See* Doc. 32 at 17 n.4. If Plaintiff relies on that document to demonstrate the amount in controversy, it is not in the record.

[6] In the Underlying Suit, ABS sues both Defendant DWF and GSC Installations, Inc. for labor provided as sub-contractors on a window installation. Doc. 14-3.

insufficient.  As such, the Court is not satisfied that Plaintiff has demonstrated the amount in controversy based on ABS's Third-Party Complaint.

As to the third factor, Plaintiff states that it "already incurred $50,108.99 defending the present action subject to a reservation of rights and has set a budget of $150,000 just in defense costs alone in the Underlying Suit."  Doc. 32 at 8.  Again, $50,000.00 is below the jurisdictional threshold and if it is Plaintiff's position that the threshold is met through a budget projection, it provides no citation to authority to establish that claim.  "Courts cannot speculate and are especially vigilant when assertions on attorney's fees are self-serving."  *MCM Retail Grp, Inc. v. D4 Media Corp.*, 2024 WL 1941619, at *1 (M.D. Fla. Feb. 7, 2024) (citations omitted).  Nor has Plaintiff established the somewhat dubious proposition that it can meet the amount in controversy solely by filing a declaratory action such as this and spending more than $75,000 litigating the declaratory action alone.

Since Plaintiff has still not adequately briefed the issue of the amount in controversy and the Court cannot move forward without subject matter jurisdiction, the Motion is due to be denied.  If Plaintiff renews its request, it must provide a basis for the relief with a memorandum of authority along with supporting exhibits to the extent they exist.  *See* Local Rule 3.01(a).

### B.  Actual Case or Controversy

Second, even if Plaintiff can establish that this Court has jurisdiction over its claims, the Court is still not persuaded that an actual controversy exists based on Plaintiff's latest brief.  As to Plaintiff's initial request for default judgment, the Court found that Plaintiff did not: (1) sufficiently address the alleged controversy as to each Defendant; (2) specify if it sought default on both

claims; or (3) convince the Court that the claims were ripe for review.[7]  Doc. 28.  In the renewed

request for default, Plaintiff has only partially addressed the Court's concerns.

As an initial matter, in a footnote Plaintiff clarifies that it only seeks default judgment as

to Count I based on the Townhouse Exclusion.  Doc. 32 at 4, n. 1.  Plaintiff states:

> [D]iscovery in the Underlying Suit has revealed that DWF performed window
> installation work during and then outside the timeframe of the Policy. Accordingly,
> Plaintiff concedes that question of the duty to indemnify may not be ripe until there
> is an adjudication on the merits of whether the work performed during the Policy
> was defective and abatement of Count II would be appropriate."

*Id*.

That leaves the question of whether Count I—"Declaratory Relief that [Plaintiff] Has No

Duty to Defend or Indemnify DWF from ABS' claims Due to the Townhouse Exclusion)"—

presents an actual controversy or is ripe for this Court's review.   Doc. 14 at 6 to 8.  Under the

Declaratory Judgment Act, 28 U.S.C. § 2201(a), federal courts are authorized to declare the rights

of parties only in cases involving an actual controversy.  The actual controversy requirement is

identical to the case or controversy requirement of Article III of the U.S. Constitution.  *Harnett v.

Estate of Chislett*, 487 F.Supp.3d 1270, 1276 (S.D. Ala. Aug. 20, 2020) (citations omitted).

Therefore, a threshold question in an action for declaratory relief is whether a justiciable

controversy exists.  *See Wendy's International, Inc. v. Birmingham*, 868 F.2d 433, 435 (11th Cir.

1989) ("Intriguing though the questions raised by these allegations may be, initially we are faced

with the crucial issue of whether the plaintiffs have alleged facts sufficient to establish a justiciable

---

[7] As noted in the Court's July 19, 2024 Order, Plaintiff claims in the Amended Complaint that since DWF's alleged defective work was performed outside or after the policy period, "there is no reason to wait for an adjudication in the Underlying Case, especially because the dates of the work itself may not and will not be an essential element of the claims made." Doc. 28 at 6, citing 14 at 8.  It, therefore, appeared that Plaintiff anticipated a ripeness issue, and the Court directed Plaintiff to address this statement upon renewal of the request for default.  *Id*.

controversy.”). ""A court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "

"Under Florida law, an insurer's duty to defend is triggered when the underlying complaint against its insured 'fairly brings the case within the scope of coverage.'" *S.-Owners Ins. Co. v. Justus*, 2024 WL 4556133, at *3 (M.D. Fla. Oc. 23, 2024 (quoting *Princeton Excess & Surplus Lines Ins. Co. v. Hub City Enters., Inc.*, 808 F. App'x 705, 708 (11th Cir. 2020)).[8] "An insurer has a duty to defend the entire suit when the complaint alleges 'facts that fairly and potentially bring the suit within the policy coverage." *J.B.D. Constr., Inc. v. Mid-Contient Cas. Co.*, 571 F. App'x 918, 926 (11th Cir. July 11, 2014) (quoting *Jones v. Fla. Ins. Guar. Ass'n*, 908 so.2d 435, 442-43 (Fla. 2005)).

The Court's second problem with the Motion is that it is unclear how an actual controversy exists when Plaintiff's own allegations, if taken as true for purposes of default, reflect that the Policy never applied.  Plaintiff alleges that "the underlying construction defect claims *all* pertain to the same Townhouse Project, which exceeds the twenty five unit limit expressly provided for in the Townhouse Exclusion in the Policy."  Doc. 14 at 5 (emphasis in original).  But as the Court noted in the July 19, 2024 Order, Plaintiff also alleges that "[t]he actual window installation work performed by DWF was performed outside the effective dates of the subject Policy or *any* Policy

---

[8] Plaintiff seems to include both a duty to defend *and* duty to indemnify component in Count I. The Court will focus on the duty to defend and address the duty to indemnify *infra*.

issued by [Plaintiff]." Doc. 14 at 8 (emphasis in original).[9] Further, Plaintiff alleges that the third-party complaint in the underlying action does not allege any occurrence or damage "caused during the effective dates of the Policy, i.e., between September 10, 2016 to September 10, 2017 ('Policy Period'), or any specific period whatsoever caused by DWF." *Id*. at 6.

If the Third-Party Complaint does not include any allegations involving the period DWF was insured, then the Court is not convinced it should even reach the question of whether the pleading fairly and potentially brings the suit within the Policy coverage. While courts may have jurisdiction to ultimately decide if a duty to defend has been triggered—e.g., through the interpretation of an exclusionary provision like the one in the Policy—it seems a party must still first meet the initial burden of demonstrating that the controversy is real. And, here, it appears that adverse legal interests might be lacking between Plaintiff and Defendants. ABS has sued DWF, but Plaintiff is correct that there is no specific allegation in the Third-Party Complaint that the work occurred during the coverage period—September 10, 2026 to September 10, 2017. *See* Doc. 14-3 (attached to the Amended Complaint). So, it is not clear what actual adverse interest Plaintiff has against ABS or DWF.

On this issue, Plaintiff states "[w]hether [Plaintiff] owes a duty to defend and indemnify DWF from ABS' claims is 'definite and concrete, (and) touch[es] the legal relations of" DWF and ABS because they have 'adverse legal interests.'" Doc. 32 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). As proof that the controversy is definite and concrete,

_____

[9] As stated *supra*, Plaintiff drops a footnote and mentions that discovery in the Underlying Suit reflects that DWF performed work during the Policy timeframe. Doc. 32 at 4, n.1. The statement conflicts with the allegations in the Amended Complaint and Plaintiff has not sought leave to amend. Plaintiff cites to no document to support this statement. *See id*. Accordingly, the Court is left with the allegations in the operative pleading.

Plaintiff states that it has "spent more than $50,000 and will ultimately spend more than $150,000 just in defending a claim that is not covered under its Policy. [Plaintiff] is in dire need of this determination so it is appropriately adjudged that it has no duty to continue expending inordinate sums on a claim that is not covered under its Policy." Doc. 32 at 16.

But Plaintiff does not allege that DWF has filed an insurance claim with Plaintiff related to the events at issue in the Underlying Suit nor does Plaintiff allege that it is currently a party to the Underlying Suit. *See* Doc. 14. If it is Plaintiff's contention that it can create an actual controversy between the parties simply by filing the instant action in this Court and spending money to litigate its quest for a declaration through the federal court, Plaintiff cites to no authority to support that position. Perhaps it is possible, but Plaintiff will have to further develop that argument.

As to ABS, Plaintiff contends that "ABS is directly affected because, as claimants, they are indispensable parties to the adjudication between [Plaintiff] and DWF because their interests would be prejudiced." Doc. 32 at 16. While the Court does not dispute that a claimant seeking relief against an insured may be a necessary party in an insured's declaratory action, the Court is not convinced that ABS's indispensable status automatically means there is an *adverse* interest to create a controversy. Again, Plaintiff's own undisputed allegations reflect that ABS's Third-Party Complaint does not include allegations that the work at issue was done when there was coverage. A claimant like ABS may have an *interest* for purposes of determining joinder, but the Court is still not persuaded that interest alone is necessarily adverse based on the circumstances of this case.

The Court notes that Plaintiff appears to rely heavily on *AIC v. V&A Drywall and Stucco, Inc.*, 2021 WL 1338768 (M.D. Fla. Apr. 9, 2021) for relief and refers to the case as "identical" to the instant matter. *See* Doc. 32 at 19 to 20. But to the extent Plaintiff cites to *V&A Drywall* to

demonstrate that the Court should find an actual controversy here, the Court finds a key difference

in the procedural history and facts of that case.  Namely, there is nothing in the court's discussion

in *V&A Drywall* to reflect that Plaintiff[10] alleged in the operative pleading, as it did here, that the

third-party plaintiff failed to claim that the work was done during the coverage period.  *See id*.

Admittedly, the court in that case found that there was no duty to defend because the policy at

issue was not in effect, but that determination came at the summary judgment stage.  *Id*. at *2.  In

contrast, upon consideration of Plaintiff's request for relief, the Court must examine the pleadings

to determine if default is appropriate.  And, as discussed *supra*, the Court is not convinced it should

reach the question of whether the duty to defend was triggered as the *V&A Drywall* court did

because the allegations seem to show that there is no real controversy.

If the Court were to find that an actual controversy exists based on the facts in the instant

case, then it seems that an insurer could obtain declaratory relief any time a former client is sued

simply because at some point in time there was coverage.  Granting default judgment in this

context appears to offend the Constitution and Plaintiff's brief does not convince the Court

otherwise.  *See Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F.Supp.3d 1294,

1302 (M.D. Fla. Dec. 21, 2015) ("Ordinarily, a controversy is not sufficiently immediate or real

where the parties' dispute is only hypothetical and not yet ripe, has been rendered moot, or where

the court's resolution of the matter would be purely academic.").

If Plaintiff renews its request for default judgment, it must provide more regarding its

contention that an actual controversy exists.

---

[10] AIC is the Plaintiff in both cases.

### C.      Duty to Indemnify Claims

Finally, while not a basis for the Court's denial of the Motion, the status of Plaintiff's indemnity claims and Count II is not clear.  First, Plaintiff cites to nothing to support its statement that Count II should be abated.  *See* Doc. 32 at 4, n.1.  If Plaintiff renews its request, Plaintiff must provide authority to show that abatement of the claim is the correct result instead of dismissal without prejudice.

Second, Plaintiff states that it "concedes that question of the duty to indemnify may not be ripe until there is an adjudication on the merits of whether the work performed during the Policy was defective and abatement of Count II would be appropriate."  *Id*.  Based on this statement, the Court is not sure whether its concession regarding indemnification is limited to Count II.  Count I also has a duty to indemnify component (*see* Doc. 16 at 6) and Plaintiff should clarify what remains, if anything, of the duty to indemnify issue if Plaintiff renews the request for relief.

And if Plaintiff seeks to go forward with a request for default judgment on Count I in its entirety, Plaintiff must also address the propriety of doing so since it appears that the indemnity claim would be premature.  *See Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc. Inc.*, 341 F.Supp. 3d 1289, 1292 (M.D. Fla. 2018) ("For an insurer's duty to indemnify, many district courts in the Eleventh Circuit have held 'that an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action.") (quoting *Interstate Fire & Cas. Co. v. McMurry Constr. Co., Inc.*, 2017 WL 821746, at *3 (M.D. Fla. Mar. 2, 2017)).

### II.     Conclusion

In sum, Plaintiff has not adequately demonstrated that subject matter jurisdiction exists or that there is an actual controversy before the Court.  If Plaintiff files another motion for default

judgment, it must provide an analysis with citation to authority on these issues and clarify the status of the duty to indemnify claim(s) and Count II.

Based on the foregoing, it is **ORDERED** that Plaintiff's Motion (Doc. 32) is **DENIED without prejudice**.  On or before April 7, 2025, Plaintiff must seek default judgment by filing a renewed motion or show cause why the case should not be dismissed without prejudice for failure to prosecute.  *See* Local Rule 3.10.  Failure to file such a motion or show cause within the time provided will result in dismissal without prejudice without further notice.  *Id*.

**ORDERED** in Orlando, Florida on March 13, 2025.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE